213     601
f 32 SC ²239

213     601
224     ¹⁴21

# Hershey's Estate.

*Vendor and vendee—Real estate—Agreement to sell—Contract—Inability of vendor to make title—Refusal of wife to execute deed—Liability of vendee in possession for interest on purchase money—Interest—Husband and wife.*

Where lands are sold on articles of agreement and the buyer enters into possession and so continues, he must pay interest for the profits he is receiving during the vendor's inability to make title.

A husband and wife executed and acknowledged an agreement in writing agreeing to sell and convey real estate. The wife refused to sign the deed. The husband executed the deed and expressed his willingness to do whatever he could to complete the transaction. The purchaser refused to pay the consideration until execution of the deed by the wife. After the death of the husband his executrix presented a petition for a decree for specific performance. *Held,* that the purchaser was liable for interest on the purchase money.

Argued Nov. 3, 1905. Appeal, No. 202, Oct. T., 1905, by The New York and Cleveland Gas Coal Company, from decree of O. C. Allegheny Co., April T., 1905, No. 304, sustaining certain exceptions and dismissing others in petition for specific performance of contract of decedent in estate of John Hershey, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Exceptions to decree allowing interest on purchase money in proceedings to compel specific performance of a contract for the sale of real estate.

From the record it appeared that John Hershey and his wife, by agreement in writing duly acknowledged and recorded, agreed to grant and convey to appellant certain lands owned by the husband. The wife refused to sign the deed but Hershey signed it and delivered possession of the lands to appellant and offered to do everything he could to complete the title. After Hershey's death the wife, executrix, presented to the orphans' court a petition praying for a decree of specific performance upon payment of the purchase money with interest.

Other essential facts appear in the following opinion of HAWKINS, P. J., of the court below :

The rule has long been settled that where lands are sold on articles of agreement, and the buyer enters into possession, and

so continues, he must pay interest for the profits he is receiving
during the vendor's inability to make title, for it would be
grossly inequitable that the vendees should hold both land and
money and compensate for neither. These and kindred circum-
stances raise an obligation to pay interest though the purchase
money is not recoverable : Minard v. Beans, 64 Pa. 411. There
may be cases where the vendee has been harassed and disturbed
in possession; where there has been willful and vexatious de-
lays or gross and criminal laches in the vendor which will raise
an equitable defense in favor of the vendee : Fasholt v. Reed,
16 S. & R. 266. But nothing of this kind appears in the pres-
ent case. On the contrary, all the equities are in vendor's favor.
The only question is whether or not the tender made by the
vendee stopped the running of interest as against the vendor.
The mere fact of formal tender is not conclusive of the vendee's
right. The right of the parties to specific performance is to
be determined, not on the basis of common law, but on princi-
ples of chancery : Weise's Appeal, 72 Pa. 351 ; Fry on Specific
Performance, 1243, and the inquiry must therefore be into the
equities of the parties. Prima facie the tender implied that
Mr. Hershey was in default, but in view of the circumstances
is this true ? From the beginning he manifested a willingness
and readiness to do what his contract required. To use the
language of one of vendee's witnesses, he was "always willing
to do his part." He not only signed the deed which vendee's
counsel had prepared, but put the vendee in actual occupation
and use of the land ; his vendee had a record title and was en-
joying the fruition of his contract, and why should he not on
his part enjoy the fruits of his contract. Because it is said that
his wife refused to sign the deed. But he was in no sense re-
sponsible for her conduct; the policy of the law forbade coercion
or compulsion on his part. In Riesz's Appeal, 73 Pa. 485,
where the wife had refused to sign an instrument the court
denied specific performance upon this ground. See also Burk
v. Serrill, 80 Pa. 413. So far as the husband is concerned he
was absolutely without power to compel conveyance. On the
other hand, the vendee by accepting the agreement which Mrs.
Hershey had signed and acknowledged, and going into posses-
sion of the land which was the subject of it, assumed the risk
of her responsibility and had within reach the only means of

enforcing that responsibility. But it is suggested that Hershey should have offered to convey whatever interest he had. " He was always willing to do his part " and he offered to do all and more than the contract required. It was not for him to offer an incomplete title. If respondent was willing to accept less than the contract called for the suggestion should have come from that source. The tender of the whole purchase price implied demand of the whole title, and no concession from this was offered during Hershey's lifetime. But suppose such conveyance had been made, no loss could have resulted to the vendee during Hershey's life, for he would have been entitled to whatever interest or profits might accrue during that period. A wife's right to share in the profits of the land is contingent upon survivorship as widow, and she could do nothing then because by joining in the execution of the agreement of sale she consented to the conversion of land into personalty and consequent extinction of her equity to dower. If there had been a decree of specific performance she could have had no right to any part of the purchase money, it must have been awarded to her husband as owner, and she must look to its distribution in the character of personalty on his death. The case is clearly distinguishable from Riesz' Appeal, supra, and its class, by the fact of written relinquishment. On the other hand, the vendee by voluntarily coming into use and occupation of the land affirmatively waived, for the time being at least, conveyance of the legal title, and the fact that it afterwards made no move to exercise its power to enforce specific performance implies that formal conveyance was not yet of sufficient importance to stir action. It had accomplished its purpose so far as substantial enjoyment of land was concerned, and conveyance of the legal title was a mere matter of form which did it no hurt. Enforcement of conveyance was, as already suggested, not within Hershey's power, but was available to respondent, if it wished to use it. It might, however, have waived conveyance, and, resting upon its equitable title and possession, safely paid the whole purchase money.

The use and occupation of the land ought to have suggested an equivalent to Mr. Hershey, but even the custom of deposit of interest does not seem to have occurred to respondent. From the date of taking possession of Hershey's land, respond-

ent has had complete command of the situation, and now seeks to take unfair advantage of it. It was grossly inequitable that respondent should retain both land and money and refuse to exercise its exclusive power to coerce Mrs. Hershey to specific performance. The loss of interest was in no sense Mr. Hershey's fault. He did everything possible for him to do, and more than his contract required, to carry out the sale. The remedy lay not in his, but in respondent's discretion. If there was laches, it was not his but the respondent's and respondent will not be permitted to take advantage of its own wrong. It follows that respondent is liable for interest on the whole purchase money for the period of its possession of the land until the present time.

*Error assigned* was the decree of the court allowing interest on the purchase money.

*John P. Hunter*, with him *Sol. Schoyer, Jr.*, for appellant, cited: Jordan & Cooper, 3 S. &. R. 564.

*J. McF. Carpenter*, for appellee.

PER CURIAM, January 2, 1906:
The majority of the court affirm the decree on the opinion of the learned president of the court below.